IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

PAUL ASHBY
GERRY WHITEHEAD
JESSICA PIGG WHITEHEAD                                                    PLAINTIFFS

V.                                                             CASE NO. 1:07CV248

THE AMERICAN LEGION
AMERICAN LEGION DEPARTMENT OF MISSISSIPPI
AMERICAN LEGION POST 130                                                  DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court on the motion [21] of defendants, American Legion Department of Mississippi ("ALDM") and The American Legion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

On October 19, 2007, the plaintiffs brought suit against the American Legion, ALDM, and American Legion Post 130 ("Post 130"). The suit seeks injunctive and declaratory relief under Title II of the Civil Rights Act of 1964 and monetary damages under the Civil Rights Act of 1866 and the state law tort of outrage.

The allegations in the complaint set forth the following facts. Plaintiff, Paul Ashby a black male, attended the wedding of white plaintiffs, Jessica Pigg Whitehead and Gerry Whitehead. Following the wedding, a reception was held at Post 130 in Baldwyn, Mississippi. The reception was in a private area adjoining the public bar. Ashby was initially denied service at the bar because of his race. Eventually, Ashby was served a beer. Post Commander, Billy Joe Blankenship, then told another reception guest that Ashby would no longer be served by his staff. Blankenship further told the guest the shutters to the private room would have to remain open so

the bartenders could keep an eye on the black man.

At this point Gerry confronted Blankenship about the situation. Blankenship responded that some of Post 130's patron's did not want Ashby's kind there. Blankenship intimated violence could be directed as Ashby if he did not leave. Jessica then approached the bar area and began to cry uncontrollably because of the actions taken against Ashby.

The wedding party then decided to leave the premises. While leaving, Ashby approached Blankenship telling him he was unaware that his kind were not welcome at the American Legion and that he would never return again. Blankenship acknowledged Paul was not welcome and was pleased to see him go. In solidarity with the wedding party seven or eight Post 130 patrons also left the premises and apologized to Ashby and the wedding party.

Each of these actions were taken by the leadership or employees of Post 130. In seeking to hold the American Legion and ALDM liable, the complaint alleges the two supervising entities operate, condone, and ratify the existence of de facto segregated facilities in Mississippi through the creation, establishment and maintenance of separate facilities for white and black members. Additionally, the complaint alleges the American Legion is a national organization composed of state departments and that each state is further divided into districts composed of various posts. The American Legion grants the officers of the departments and posts authority to conduct day-to-day operations. The American Legion disseminates manuals, guidelines, and other materials describing the officers required of each group, the duties and responsibilities of those officers, and how those duties and responsibilities should be performed. The American Legion has the right to control the conduct of its departments and posts and the power to approve, deny, suspend, or revoke the charters of those organizations. The complaint also alleges the ALDM has the same power to control its posts.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964-65, 167 L..Ed. 2d. 929 (2007)(internal citations omitted). In order to survive a motion to dismiss, the plaintiff, while not required to provide a heightened fact pleading of specifics, must plead enough facts in the complaint to state a claim for relief that is plausible on its face. *Id*. at 1974. . . . [O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969.

The American Legion and ALDM argue they can not be held liable under The Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, because they are separate legal entities from Post 130. The plaintiffs counter that there is no proof Post 130 has a separate legal existence from the two supervising organizations.

The complaint states "Post 130 . . is, upon information and belief, a Mississippi corporation and an organizational subdivision of the Defendant Department of Mississippi and Defendant American Legion." The American Legion and ALDM interpret this statement as an acknowledgment that Post 130 and the American Legion and ALDM are separate legal entities. Taken in isolation this statement would lead to such a conclusion. However, when deciding a motion under the Rule 12(b)(6) standard a court must view the complaint as a whole under the

liberal pleading standard provided for under the federal rules. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 289 (5th Cir. 2004) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113 (3rd Cir. 1998)).

In order to survive this motion the plaintiffs must have alleged facts sufficient to find the American Legion and ALDM have given their consent for Post 130 to act on their behalf and that Post 130 is subject to the control of the two supervising entities. *See Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000). Taken in the light most favorable to the plaintiff there are facts indicating this may be the case. The complaint states that Post 130 is an administrative unit under the American Legion and ALDM. Other facts would support the inference that the two organizing entities have the ability to control Post 130 and its officers. There is little information available in the pleadings for the court to determine the level of control the American Legion and ALDM do or could exert over Post 130. Therefore judgment on the pleading is inappropriate. This issue would best be resolved in summary judgment after the parties have had the opportunity for discovery and can more fully explain the organizational structures and controls in place.

The same issue controls as to the plaintiffs' state law claim. The American Legion and ALDM can only be held liable for the tort of outrage if the plaintiffs can prove their right to control Post 130. *See Allen v. Choice Hotels Intern.*, 942 So. 2d 817, 821 (Miss. App. 2006) (citing *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 199 (Miss. 1988)); *see also Kisner v. Jackson*, 159 So. 90, 91 (Miss. 1931) (outlining factors used to determine whether a party is the master of another). As discussed above, the complaint pleads enough facts to allow for the inference of control. Judgment on the pleadings is denied.

Finally, the American Legion and ALDM challenge the plaintiffs claim under Title II of

the Civil Rights Act of 1964. The two supervising entities argue the plaintiffs lack standing to bring an action under Title II. The plaintiffs do not respond to this argument.

The American Legion and ALDM put forward that Ashby is under no definite threat of permanent injury because he told the Post Commander he would never return. The Supreme Court has addressed constitutional standing in three cases this court finds helpful for its decision. In *Los Angeles v. Lyons*, the Court found a plaintiff lacked standing because he could not credibly show a realistic threat from a policy that would only apply to him upon arrest. 461 U.S. 95, 107 n.7, 108 n. 8 (1983). In *Lujan v. National Wildlife Federation*, the Court held a plaintiff had no standing when it could state only that one of its members used an unspecified portion of an immense area of which some portions contained the disputed mining processes. 497 U.S. 871, 889 (1990). In *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, the Court found standing where a plaintiff alleged its members would use a recreational area save for the perception of the disputed pollution. 528 U.S. 167, 184-85 (2000).

Those three cases applied to the facts at hand require the plaintiffs to show they would return to Post 130 save for the racially discriminatory conduct they suffered. Again the standard of review associated with judgements on the pleadings controls the court's decision. The complaint clearly states Ashby told the Post Commander he would not return. However, reading the complaint as instructed under *Causey*, it is possible to read the facts as showing Ashby would return except for the ill treatment that he received. Once developed the facts may show that Ashby would not return under any circumstances, that he could not return to a place possibly open only to members, or that his return is so speculative no standing exists. However, until those facts are properly before the court judgement on the pleadings is improper.

Defendants' motion for judgment on the pleadings is **DENIED**.

An Order consistent with this memorandum opinion shall issue today.

This the 23rd day of October, 2008

                                        **/s/ MICHAEL P. MILLS**
                                        **CHIEF JUDGE**
                                        **UNITED STATES DISTRICT COURT**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**