IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

PAUL ASHBY
GERRY WHITEHEAD
JESSICA PIGG WHITEHEAD                                               PLAINTIFFS

VS.                                                                  CASE NO. 1:07CV248

THE AMERICAN LEGION,
AMERICAN LEGION DEPARTMENT OF MISSISSIPPI
AMERICAN LEGION POST 130                                             DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court on the motions **[78]** of Defendant American Legion Department of Mississippi ("ALDM") and **[81]** of Defendant The American Legion seeking summary judgment. Defendant American Legion Post has joined **[80]** in portions of American Legion Department of Mississippi's motion.

The facts in this case are undisputed. On August 11, 2007 Paul Ashby, African-American, attended the wedding reception of Jessica Pigg Whitehead and Gerry Whitehead, Caucasians, at the American Legion Post 130 in Baldwyn, Mississippi. The reception was in a private area adjoining the public bar. Ashby was initially denied service at the bar because of his race. Eventually, Ashby was served a beer. Post Commander, Billy Joe Blankenship, then told another reception guest that Ashby would no longer be served by his staff. Blankenship further told the guest the shutters to the private room would have to remain open so the bartenders could keep an eye on the black man.

At this point Gerry confronted Blankenship about the situation. Blankenship responded

that some of Post 130's patron's "did not want Ashby's kind there." Blankenship intimated violence could be directed as Ashby if he did not leave. Jessica then approached the bar area and began to cry uncontrollably because of the actions taken against Ashby.

The wedding party then decided to leave the premises. While leaving, Ashby approached Blankenship telling him he was unaware "that his kind were not welcome at the American Legion" and that he would never return again. Blankenship acknowledged Paul was not welcome and was pleased to see him go. In solidarity with the wedding party seven or eight Post 130 patrons also left the premises and apologized to Ashby and the wedding party.

Plaintiffs Ashby and the Whiteheads filed the instant action alleging that the Defendants violated Ashby's right to contract in violation of The Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, and committed the state law tort of outrage against all three plaintiffs. Ashby also seeks injunctive and declaratory relief under Title II of the Civil Rights Act of 1964.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the

jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110.

All Defendants argue that Ashby cannot establish a claim under 42 U.S.C. § 1981 because Post 130 did not deny him the right to make a contract. To prevail on this claim, Ashby must establish (1) that he is a member of a racial minority; (2) that Defendant had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). The parties do not dispute that Ashby is a member of a racial minority. Further, Defendants do not contend that Blankenship's comments were not racially charged or that Ashby's treatment was not based on racial discrimination. The issue in this case is whether Post 130 employees' actions implicate rights guaranteed by § 1981.

Ashby claims that he was deprived of his ability "to make and enforce contracts" without discrimination. 42 U.S.C. § 1981(a). This right "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Ashby's first alleged deprivation is that he was refused service by Post 130 employees. Plaintiff Ashby must demonstrate "the loss of an actual, not speculative or prospective, contract interest." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751-52 (5th Cir. 2001). Ashby "must 'offer evidence of some tangible attempt to contract' that in some way was 'thwarted' by the defendant." *Arguello v. Conoco, Inc.*, 207 F.3d 803 (5th Cir. 2000) (quoting *Morris*, 277 F.3d at 751-52). In this case, Ashby was eventually served the beverage he ordered. Post 130 employees did deter Ashby from making a purchase, but did not prevent him from doing so after a friend instructed the employees to serve Ashby. Post 130 employees then informed Jessica

3

Whitehead that a white person would have to get any future drinks for Ashby. However, Ashby did not attempt to purchase another beverage. The employees' conduct does not establish a 1981 claim absent a request from Ashby that resulted in a complete failure to receive service. *Morris*, 277 F.3d at 752. This portion of Ashby's 1981 claim will be dismissed.

Ashby also claims that Defendants deprived him of the right to enjoy the facilities and services of Post 130 on the same terms and conditions as white patrons. The court will assume that Ashby's claim is that his right flowed from Jessica and Gerry Whitehead's contract with Post 130 for their event. A person may be deemed a third-party beneficiary if:

> (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2) the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract.

*Simmons Housing, Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1296 (Miss. 2010) (citing *Burns v. Washington Savings*, 171 So. 2d 322, 325 (Miss. 1965)). Third-party beneficiary status arises from the terms of the contract. *Id*. Further, a third-party beneficiary must benefit directly from the contract; a mere incidental or consequential benefit is insufficient. *Id*. (citing *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006).

The terms of the Whitehead's contract with Post 130 have not been presented to the court. It is unknown if the wedding guests were specifically referenced or alluded to in the terms. The claim will proceed for the jury to determine if Ashby was an intended, or merely incidental beneficiary of the Whitehead's contract with Post 130.

The American Legion and ALDM further argue that the entities are not vicariously liable for the actions of Post 130 in potentially depriving Ashby of the right to enjoy contractual

4

benefits.  Ashby must establish that The American Legion and ALDM had an agency relationship with Post 130 in order to hold these defendants liable for racial discrimination.  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004) (citing *Arguello v. Conoco, Inc.*, 207 F.3d 803 (5th Cir. 2000).  No agency relationship exists if American Legion and ALDM lacked control over the daily operations of Post 130.  *Id*.  Post 130 is incorporated in Mississippi.  Its Officers Guide provides that the individual post has the power to decide whether to operate a clubroom or bar.  The guide is silent as to the operations of the bar, implying that the individual post may also make these decisions.  The only control these two defendants exert over Post 130 is revoking its charter and hearing appeals on such revocation.  Thus, the defendants do not control day-to-day operations and cannot be liable for Post 130's alleged actions that deprived Ashby of a right to enjoy contractual benefits.

Ashby's § 1981 claim will be dismissed against The American Legion and ALDM, but will proceed against Defendant Post 130 on the issue of whether Ashby was an intended beneficiary of the rights under the Whitehead's contract with the entity for their wedding reception, and if so, whether he was deprived of those rights due to his race.

All three Defendants further contend that Ashby lacks standing to maintain a claim under Title II.  "The plaintiff [Ashby] must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660 (1983) (internal quotations omitted).

Ashby expressly told Blankenship that he would never return to Post 130.  Ashby stated later at his deposition that he did not plan to return to Post 130.  Ashby further stated that if Post

5

130 "got cleaned up" to the point where he would feel safe to walk into the facility, that he might return. Ashby admitted that he had never been to Post 130 before the Whitehead's wedding reception. Ashby is not a member of Post 130, and has no friends who are members.

Ashby's statements are not specific and are even less definitive than speculative intention to go 'some day' as Ashby does not assert that he would attend Post 130 but for the racial discrimination, but merely "might." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 184, 120 S. Ct. 693 (2000). The court finds that Ashby's potential return to Post 130 is so speculative that no standing exists.

Defendants American Legion and ALDM argue that Plaintiffs' outrage claim should be dismissed on the grounds that the entities cannot be liable for the actions of Post 130 employees. Under Mississippi law, Plaintiffs must establish that the entities are "masters" of Post 130, and had control over "the means as well as the ends." *Allen v. Choice Hotels Int'l*, 942 So. 2d 817, 821 (Miss. Ct. App. 2006). In *Kisner v. Jackson*, the Mississippi Supreme Court provided a non-exclusive list of factors for the court to use in determining whether a party is the master of another party:

> (1) Whether the principal master has the power to terminate the contract at will; (2) whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; (3) whether he furnishes the means and appliances for the work; (4) whether he has control of the premises; (5) whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; (6) whether he has the right to prescribe and furnish the details of the kind and character of work to be done; (7) whether he has the right to supervise and inspect the work during the course of the employment; (8) whether he has the right to direct the details of the manner in which the work is to be done; (9) whether he has the right to employ and discharge the subemployees and to fix their compensation; and (10) whether he is obliged to pay the wages of said employees.

132 So. 90, 91 (Miss. 1931). Applying these factors, the court finds that The American Legion and ALDM did not act as masters of Post 130. The Legion may cancel, suspend, or revoke a Department's charter. ALDM may revoke the charter of a post. A post may appeal this decision to the national chapter. The entities may only remove a post officer for failing to pay dues, which is a requirement for general membership.

Post 130 does not join this portion of ALDM's motion, thus Plaintiffs' state law allegation of outrage will proceed against this defendant.

Finally, all Defendants contend that Plaintiffs cannot establish a claim for negligence. The plaintiffs must establish under such a claim that (1) the defendants had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendants failed to conform to that required standard; (3) the defendants' breach of duty was a proximate cause of the plaintiffs' injury, and; (4) the plaintiffs were injured as a result. *Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 504 (¶ 8) (Miss. 2007) (citing *Burnham v. Tabb*, 508 So. 2d 1072, 1074 (Miss. 1987)).

Plaintiffs allege that the defendants failed to use reasonable care in training its members and officers regarding non-discrimination on the basis of race, failed to ensure its officers did not discriminate against patrons on this basis, and failed to supervise its officers in order to prevent discrimination.

Defendants contend that liability cannot exist because there is no cause of action under Mississippi law for racial discrimination, thus the entities cannot be negligent for failing to prevent such discrimination. Defendants are essentially arguing that no duty existed relating to the prevention of racial discrimination by its employees. The court declines to accept this

7

argument; however Plaintiffs have established no authority nor have they developed any facts to support this claim in this action. The same will be dismissed.

Defendant ALDM's motion **[78]** is **GRANTED**. Defendant The American Legion's motion **[81]** is **GRANTED.**

As such, Defendants The American Legion and ALDM are dismissed as parties from this suit. Post 130 is not entitled to the requested relief in its joinder **[80]** and Plaintiffs' remaining claims shall proceed against Defendant Post 130.

This the 4th day of April, 2011.

                         **/s/ MICHAEL P. MILLS**
                         **CHIEF JUDGE**
                         **UNITED STATES DISTRICT COURT**
                         **NORTHERN DISTRICT OF MISSISSIPPI**